IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROBERT GRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. CV-06-1058-HU |
| v. | ) |
| | ) |
| RENT-A-CENTER WEST, INC. | ) FINDINGS & RECOMMENDATION |
| | ) |
| Defendant. | ) |

Daniel Snyder
Sara Thistlethwaite
LAW OFFICES OF DANIEL SNYDER
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205

    Attorneys for Plaintiff

Michael T. Garone
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center
1211 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97204

    Attorney for Defendant

HUBEL, Magistrate Judge:

    Plaintiff Robert Gray brings this action against his former employer, defendant Rent-A-Center West, Inc. Plaintiff alleges that defendant discriminated against him because plaintiff reported

1 - FINDINGS & RECOMMENDATION

a workplace injury and applied for worker's compensation benefits, in violation of Oregon Revised Statute § (O.R.S.) 659A.040. He also alleges that defendant violated the Oregon Family Leave Act (OFLA), O.R.S. 659A.150 - 659A.186 by threatening to fire him if he failed to return to work by a certain date, and then by terminating his employment.

Defendant moves to dismiss the action based on an arbitration agreement between the parties. I recommend that the motion be granted.

## BACKGROUND

Plaintiff began working for defendant on or about November 13, 2004. Coml. at ¶ 3; Answer at ¶ 3. On Friday, July 15, 2005, plaintiff sustained the workplace injury that forms the basis for his claims. Compl. at ¶ 5; Answer at ¶ 7. Plaintiff was terminated on July 21, 2005. Id. at ¶ 11.

Since July 2000, defendant has required all new employees to agree to arbitrate all past, present, and future disputes related to their employment, explicitly including discrimination claims. Ayers Affid. at ¶ 3. In support of the motion, defendant submits two arbitration agreements signed by plaintiff. Exh.1 to Ayers Affid. Although the fonts of the two agreements are different, and one bears a signature date of November 17, 2004, while the other bears a November 18, 2004 date, the parties agree that the contents of the agreements are identical.[1]

In relevant part, the agreement provides:

---

[1] Although there are two agreements, because they are identical in substance, I refer to the singular "agreement."

2 - FINDINGS & RECOMMENDATION

CLAIMS COVERED BY THE AGREEMENT

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law.  The claims covered by this Agreement include, but are not limited to:  claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered by the Agreement."

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way related to any claim covered by this Agreement.

CLAIMS NOT COVERED BY THE AGREEMENT

Claims I may have for workers' compensation benefits and unemployment compensation benefits are not covered by this Agreement.  Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information,

3 - FINDINGS & RECOMMENDATION

>     as to which either party may seek and obtain relief from
>     a court of competent jurisdiction.

Exh. 1 to Ayers Affid. at pp. 1, 5-6.

The agreement also allows either party to: (1) be represented by an attorney; (2) depose one individual plus any experts designated by the other party; (3) serve requests for production of documents; (4) ask the arbitrator for additional discovery; (5) subpoena witnesses and documents; and (6) arrange for a court reporter. Id. at pp. 2-3, 6-8. The employee and the employer equally share filing fees and the arbitrator's fee, except if the "law of the jurisdiction in which the arbitration is held requires a different allocation of fees and costs in order for this Agreement to be enforceable, then such law shall be followed." Id. Any other relevant portions of the agreement are discussed below.

In response to the motion, plaintiff concedes that it is his signature on both agreements. Gray Affid. at ¶ 7. However, he states that he has no memory of signing the documents and that the November 17, 2004 date appearing on one of the agreements is not his handwriting. Id.

## STANDARDS

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, was enacted "to reverse the longstanding judicial hostility to arbitration agreements[.]" Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The United States Supreme Court has concluded that the FAA demonstrates a "liberal federal policy favoring arbitration agreements." Id. at 25 (internal quotation omitted). Generally applicable contract defenses, such as fraud or unconscionability, may be used to invalidate arbitration agreements

4 - FINDINGS & RECOMMENDATION

without contravening federal law. Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254, 1257 (9th Cir. 2005). The enforceability of an arbitration agreement is considered "according to the laws of the state of contract formation." Id.; see also Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (court must consider whether the arbitration agreement was formed in accordance with state law principles of contract formation).

DISCUSSION

Plaintiff does not dispute that his claims fall within the scope of the agreement if the arbitration agreement with defendant is enforceable. Plaintiff contends that the agreement is unenforceable because it is unconscionable. As the Ninth Circuit has noted, "[b]ecause unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny, it is also a valid reason not to enforce an arbitration agreement under the FAA." Circuit City Stores, 279 F.3d at 895.

Plaintiff contends the agreement is both procedurally and substantively unconscionable, and that there is a failure of consideration. Under Oregon law, the issue of unconscionability is one of law for the court. Chalk v. T-Mobile USA, Inc., No. CV-06-158-BR, 2006 WL 2599506, at *4 (D. Or. Sept. 7, 2006); see also Ken Hood Constr. Co. v. Pacific Coast Constr., Inc., 201 Or. App. 568, 577, 120 P.3d 6, 11 (2005) (issue of contract formation is an issue of law), modified, 203 Or. App. 768, 126 P.3d 1254 (2006); Oregon Bank v. Nautilus Crane & Equip. Corp., 68 Or. App. 131, 143-44, 683 P.2d 95, 104 (1984) (noting that for commercial contracts, O.R.S. 72.3020 provides that unconscionability is a question of law to be

5 - FINDINGS & RECOMMENDATION

decided by the court).

Oregon has not recognized the distinction between procedural and substantive unconsionability as have other states. E.g., Vanyo v. Clear Channel Worldwide, 156 Ohio App. 3d 706, 711, 808 N.E. 2d 482, 486 (2004) (both substantive and procedural unconscionability must exist for contract provision to be unenforceable); Armendariz v. Foundation Health Psychcare Servs., 24 Cal. 4th 83, 114, 6 P.3d 669, 690, 99 Cal. Rptr. 2d 745, 767-68 (2000) (under California law, unconscionability has both a procedural and a substantive element, with procedural focusing on oppression or surprise due to unequal bargaining power, and substantive focusing on overly harsh one-sided provisions); Nelson v. McGoldrick, 127 Wash. 2d 124, 131, 896 P.2d 1258, 1262 (1995) (Washington courts recognize two forms of unconscionability:  substantive, where the issue is whether a clause or term in the contract is one-sided or overly harsh, and procedural, which relates to impropriety during the formation of the contract).

But, Oregon does recognize the concepts underlying both types of unconscionability. See, e.g., Carey v. Lincoln Loan Co., 203 Or. App. 399, 422, 125 P.3d 814, 829 (2005) (noting that while "attempts to describe unconscionability lack precision [because] the concept is designed to cover a wide variety situations[,] [t]he primary focus appears to be relatively clear:  substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power"). Thus, regardless of the label ascribed to them, Oregon courts have recognized plaintiff's arguments.

Plaintiff's "procedural unconsionability" argument contends

6 - FINDINGS & RECOMMENDATION

that the arbitration agreement is unconscionable because it is a contract of adhesion. As Judge Brown recently stated, "[a]n adhesion contract is an agreement prepared by one party, often in a standardized form, and presented to the other party on a 'take-it-or-leave-it" basis with no opportunity for negotiations.'" Chalk, 2006 WL 2599506, at *4 (citing Reeves v. The Chem Indus. Co., 262 Or. 95, 101, 495 P.2d 729, 732 (1972)).

Plaintiff contends that he signed the arbitration agreement under the following circumstances: approximately five days after he began working for defendant, his supervisor Robert Corby pushed some documents over the counter to where plaintiff was working, and said "I need you to sign some documents as part of the new hire package. Sign these now so you can go back on the road" to make deliveries. Gray Affid. at ¶ 5. The process of signing took only seconds. Id. Plaintiff did not know that he was signing the signature pages of a Mutual Agreement to Arbitrate. Id. He does acknowledge signing documents, but only on one day. Id. at ¶ 7. He states that he was not given any arbitration agreement to read before signing the documents. Id. He did not receive copies of the signed arbitration agreements, and they were not made part of his personnel file. Id. at ¶¶ 7, 11.

Although other states find a contract procedurally unconscionable solely because it is an adhesion contract, e.g., ACORN v. Household Int'l, Inc., 211 F. Supp. 2d 1160, 1168 (N.D. Cal. 2002) (under California law, "[a] contract or clause is procedurally unconscionable if it is a contract of adhesion."), an adhesion contract under Oregon law is not, for that reason alone, unenforceable as unconscionable.

7 - FINDINGS & RECOMMENDATION

As Judge Brown recently explained:

> Adhesion contracts are not generally unenforceable under Oregon law merely because the parties have unequal bargaining power. Any ambiguities in such contracts, however, are construed strictly against the drafter. Derenco v. Benjamin Franklin Fed. Sav. and Loan Ass'n, 281 Or. 533, 552 (1978). See also Welker ex. rel. Bradbury v. Teacher Standards and Practices Comm'n, 152 Or. App. 190, 196 (1998) vacated on other grounds, 332 Or. 306 (2001). Oregon courts construe arbitration agreements liberally in favor of arbitrability. Seller v. Salem Women's Clinic, Inc., 154 Or. App. 522, 526, rev. denied, 328 Or. 40 (1998). The Oregon Arbitration Act, Or. Rev. Stat. § 36.300, et seq., recognizes the validity of all written arbitration agreements unless they are revocable under an applicable contract defense. Or. Rev. Stat. § 36.305. Because adhesion contracts generally are valid contracts under Oregon law, an arbitration agreement contained in an adhesion contract is not, therefore, per se unreasonable or unenforceable. See Sullivan v. Lenscrafters, No. 02-CV-942-BR, Opin. and Order at 12 (issued Nov. 15, 2002) (Brown, J.). Moreover, both Oregon and federal law prohibit courts from adopting standards that are stricter for evaluating the validity and enforceability of arbitration agreements than for other contracts or contract provisions. See Or. Rev. Stat. § 36.305, 9 U.S.C. § 3. See also Sullivan, No. 02-CV-942-BR, Opin. and Order at 12. The Court, therefore, concludes Oregon courts would not apply stricter standards to an arbitration provision in an adhesion contract than they would apply to other provisions in an adhesion contract.

Chalk, 2006 WL 2599506, at *4-5.

As in Chalk, "the arbitration [agreement] here is not unconscionable merely because [defendant] presented it to [plaintiff] on a take-it-or-leave-it condition of [employment.]" Id. at *5. Notably, in a case involving the exact same arbitration agreement and defendant as are present in the instant case, Judge King rejected the plaintiff's argument that the arbitration agreement was unenforceable because it was a contract of adhesion. Fontaine v. Rent-A-Center West, Inc., No. CV-05-1485-KI, Op. at p 6 (D. Or. Jan. 13, 2006). And, in another recent case involving the same arbitration agreement and defendant as are present in the

8 - FINDINGS & RECOMMENDATION

instant case, Judge Ashmanskas rejected the plaintiff's arguments of procedural unconscionability. <u>Pliska v. Rent-A-Center West, Inc.</u>, No. CV-05-1155-AS, Findings & Recommendation at pp. 3-5) (D. Or. Nov. 21, 2005) (contract was not unconscionable per se just because it was prepared by one party and presented without an opportunity to negotiate its terms), (adopted by Judge Panner on January 11, 2006).

Not apparent in the facts in <u>Chalk</u>, <u>Fontaine</u>, or <u>Pliska</u>, however, was any allegation that the plaintiff had not read the arbitration agreement. Here, plaintiff suggests that he never received anything other than the last pages of the two agreements he signed.

But, as defendant notes, each of these last pages is numbered, clearly indicating that these were multiple page documents. Exh. 1 to Ayers Affid. at pp. 4 (footer to agreement dated Nov. 18, 2004, states "MUTUAL AGREEMENT TO ARBITRATE CLAIMS" and "Page 4"); 9 (header to agreement dated Nov. 17, 2004 states "Mutual Agreement to Arbitrate Claims" and "Page 5 of 6"). Additionally, each of the two signature pages admittedly signed by plaintiff states, <u>inter alia</u>: "I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THE AGREEMENT . . . . I UNDERSTAND THAT BY SIGNING I AM GIVING UP MY RIGHT TO A JURY TRIAL" and "I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL . . . ." <u>Id.</u>

In Oregon, a party "is presumed to be familiar with the contents of any document that bears the person's signature." <u>First Interstate Bank of Or., N.A. v. Wilkerson</u>, 128 Or. App. 328, 337 n.11, 876 P.2d 326, 330 n.11 (1994) (citing <u>Broad v. Kelly's</u>

9 - FINDINGS & RECOMMENDATION

Olympian Co., 156 Or. 216, 229, 66 P.d 485, 490 (1937)); see also Pauly v. Biotronik, 738 F. Supp. 1332, 1335 (D. Or. 1990) (basic contract law imposes a duty to read the contract) (internal quotation omitted). Given plaintiff's signature on the agreement, and given the language on the page plaintiff did sign, the agreement is not unenforceable as unconscionable. Even assuming the validity of his allegation that he did not receive the preceding pages, plaintiff's failure to request those pages and read them is not a defense to enforcement.

Next, plaintiff raises issues based on "substantive unconscionability." He first contends that the agreement is unenforceable because it requires him to pay half of the forum filing fees and half of the arbitration costs. He argues that under those provisions, the cost of arbitration would likely exceed the cost of proceeding in court by at least ten times. This, he continues, makes the cost of arbitration prohibitive for persons of modest means, like himself, and renders the agreement unconscionable.

Judge King rejected this argument in Fontaine. As he noted there, the plaintiff supplied no authority to support her position that equal-fee splitting provisions would make the agreement unconscionable under Oregon law. Fontaine, Opinion at p. 6. He further noted that the agreement allowed the equal fee split to be changed. Id.; Exh. 1 to Ayers Affid. at pp. 3, 8 (filing and arbitrator's fee to be split between the parties; however, "[i]n the event the law of the jurisdiction in which the arbitration is held requires a different allocation of fees and costs in order fore this Agreement to be enforceable, then such law shall be

10 - FINDINGS & RECOMMENDATION

followed." Id.  I agree with Judge King and recommend that plaintiff's argument be rejected.

Finally, plaintiff contends that the agreement is unenforceable because the consideration is unfairly one-sided. Plaintiff contends that because he was already employed, albeit for all of five days, when he signed the agreement, he did not sign the agreement as an condition of his employment.

Both Judge King and Judge Ashmanskas addressed this issue in their respective opinions concerning this identical agreement. In Fontaine, Judge King rejected the plaintiff's argument that her continuing to work after executing the agreement was not adequate consideration. Fontaine, Opinion at p. 5. Judge King relied on Oregon law holding that for an at-will employee, continued employment provides sufficient consideration for any modification to the original employment contract.[2] Id. at p. 6 (citing Yartzoff v. Democrat-Herald Pub'g Co., 281 Or. 651, 657, 576 P.2d 356, 360 (1978)). Judge King further noted that the agreement provided for a mutual, non-illusory obligation to arbitrate claims because there are claims which the defendant could allege against the plaintiff which would be subject to the agreement. Id. at pp. 4-5.

In Pliska, Judge Ashmanskas reached the same conclusions. He also relied on Yartzoff for the proposition that the employee's continued employment with the employer is sufficient consideration to support a modification. Pliska, Findings & Recommendation at p.

---

[2] I note that in Oregon, non-compete agreements signed other than at the employee's initial employment or bona fide advancement, are not enforceable by statute. Or. Rev. Stat. § 653.295(1). But, this has no application here.

11 - FINDINGS & RECOMMENDATION

4. He found the agreement supported by adequate consideration based on plaintiff's rehiring and promotion, and based on the agreement's "mutual and reciprocal nature[.]" Id. at p. 5.

I agree with the conclusions reached by Judge King and Judge Ashmanskas and recommend that the agreement at issue in this case be enforced. Because both of plaintiff's claims are subject to the agreement, I recommend that the entire case be dismissed. See Chalk, 2006 WL 2599506, at *9 (when arbitration will resolve all of plaintiff's claims, appropriate course is to compel arbitration and dismiss action without prejudice).

## CONCLUSION

I recommend that defendant's motion (#7) be granted.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 7, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due November 21, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 23rd day of October, 2006.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge